**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

PENNEY E. ROGERS,
                             Plaintiff,

   v.                                                No. 05-CV-659
                                                       (LEK/DRH)

MICHAEL J. ASTRUE,[1] Commissioner
of Social Security,
                             Defendant.

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| HINMAN, HOWARD & KATTELL, LLP<br>Attorney for Plaintiff<br>Post Office Box 5250<br>80 Exchange Street<br>700 Security Mutual Building<br>Binghamton, New York 13902-5250 | EUGENE D. FAUGHNAN, ESQ. |
| HON. GLENN T. SUDDABY<br>United States Attorney for the<br>   Northern District of New York<br>Attorney for Defendant<br>100 South Clinton Street<br>Syracuse, New York 13261-7198 | WILLIAM H. PEASE, ESQ.<br>Assistant United States Attorney |

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[2]

     Plaintiff Penney E. Rogers ("Rogers") brought this action pursuant to 42 U.S.C. §

405(g) seeking review of a decision by the Commissioner of Social Security

("Commissioner") denying her application for benefits under the Social Security Act.

---

     [1] Michael J. Astrue is the current Commissioner of Social Security. He shall be substituted as the named defendant pursuant to Fed. R. Civ. P. 25(d)(1).
     [2] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

Rogers moves for a finding of disability and the Commissioner cross-moves for a judgment on the pleadings. Docket Nos. 4, 5. For the reasons which follow, it is recommended that the Commissioner's decision be affirmed.

## I. Procedural History

On June 2, 2003, Rogers filed an application for disability insurance benefits pursuant to the Social Security Act, 42 U.S.C. § 401 et seq. T. 75-77.[3] That application was denied on August 8, 2003. T. 54-59. Rogers requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ David Hatfield on July 8, 2004. T. 17, 60. In a decision dated December 16, 2004, the ALJ held that Rogers was not entitled to disability benefits. T. 28. On February 15, 2005, Rogers filed a request for review with the Appeals Council. T. 10-13. The Appeals Council denied Rogers' request for review, thus making the ALJ's findings the final decision of the Commissioner. T. 6-8. This action followed.

## II. Contentions

Rogers contends that the ALJ erred when he ignored her treating physicians' opinions, failed to credit properly her subjective complaints of pain, and failed to satisfy his burden that significant jobs in the national economy existed that she could perform. Rogers also contends that substantial evidence does not support the ALJ's finding that she has the residual functional capacity to perform light work. The Commissioner contends that there

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Docket No. 3.

was substantial evidence to support the determination that Rogers was not disabled.

### III. Facts

Rogers is currently forty-five years old and has a high school education. T. 18, 115. Rogers previously worked as a temporary laborer, janitor, cashier, machine operator/assembly line, and a certified nursing assistant . T. 18, 110. Rogers alleges that she became disabled on February 3, 2001 due to chronic low back pain with osteoarthritis, anxiety disorder, and depression. T. 18, 75.

### IV. Standard of Review

#### A. Disability Criteria

A claimant seeking disability benefits must establish that "he [or she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2003). In addition, the claimant's impairments must be of such severity that he or she is not able to do previous work or any other substantial gainful work considering the claimant's age, education, and work experience, regardless of whether such work exists in the immediate area, whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied for work. 42 U.S.C. § 1382c(a)(3)(B) (2003).

The Commissioner uses a five-step process, set forth in 20 C.F.R. § 416.920, to evaluate SSI disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work. Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. § 416.920 (2003).

The plaintiff has the burden of establishing disability at the first four steps. Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000). However, if the plaintiff establishes that an impairment prevents him or her from performing past work, the burden then shifts to the Commissioner to determine if there is other work which the claimant could perform. Id.

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw, 221 F.3d at 131 (citations omitted). It must be "more than a mere

4

scintilla" of evidence scattered throughout the administrative record. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Prentice v. Apfel, No. 96 Civ. 851(RSP), 1998 WL 166849, at *3 (N.D.N.Y. Apr. 8, 1998) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).  A court, however, cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).  If the Commissioner's finding is supported by substantial evidence, it is conclusive. Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996).

## V.  Discussion

### A. Medical Evidence

Rogers alleges that she became disabled on February 3, 2001 due to chronic low back pain with osteoarthritis, an anxiety disorder, and depression. T. 18, 75.  Rogers has a history of depression and panic disorder and was examined repeatedly for these and other ailments by Dr. Lorraine Seddon. T. 190-207, 226-254.  On October 12, 2001, Rogers sought treatment from Dr. Seddon after experiencing low back pain while performing janitorial work. T. 237.  Dr. Seddon noted that Rogers' low back strain improved with ibuprofen and rest. Id.  On January 8, 2002, Dr. Seddon noted that Rogers suffered from anxiety disorder but was stable with current medications. T. 236.  On July 7, 2003, Rogers

5

underwent a consultative psychiatric examination with Dr. Marion Graff, a licensed psychologist. T. 285-88. Dr. Graff concluded that the "[r]esults of the examination appear to be consistent with psychiatric problems, but in itself this does not appear to be significant enough to interfere with [Rogers'] ability to function on a daily basis." T. 288. Further, Dr. Graff noted that Rogers' depressive symptoms appeared to be significantly controlled by medication. Id.

On July 7, 2003, Rogers underwent a consultative examination with Dr. Mark Henderson. T. 290-95. Dr. Henderson noted Rogers' history of chronic low back pain and observed her decreased range of motion in the lower back and evidence of lumbar spasm. T. 294. Dr. Henderson concluded that Rogers had a moderate restriction for heavy lifting and carrying, prolonged walking, and prolonged standing. Id. Further, she had a mild restriction for prolonged sitting. Id. On July 1, 2004, Dr. Galen Graham completed a functional assessment of Rogers' abilities to perform work-related activities. T. 371-74. Dr. Graham concluded that Rogers could lift/carry no more than ten pounds occasionally and could only stand/walk/sit for a combined total of less than eight hours in a work day. T. 372.

### B. Residual Functional Capacity

Rogers contends that substantial evidence does not support the ALJ's finding that she retains the residual functional capacity ("RFC") to perform light work.

RFC describes what a claimant is capable of doing despite his or her impairments considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations which go beyond the symptoms. Martone v. Apfel, 70 F. Supp. 2d 145,

6

150 (N.D.N.Y. 1999); see 20 C.F.R. §§ 404.1545, 416.945 (2003). "RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations." Smith v. Apfel, 69 F. Supp. 2d 370, 378 (N.D.N.Y. 1999) (citation omitted). In assessing RFC, the ALJ must make findings specifying what functions the claimant is capable of performing, not simply making conclusory statements regarding a claimant's capabilities. Martone, 70 F. Supp. 2d at 150. RFC is then used to determine whether the claimant can perform his or her past relevant work in the national economy. New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); see 20 C.F.R. § § 404.1545, 416.960 (2003).

Where, as here, a claimant is able to demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner to prove that a job exists in the national economy which the claimant is capable of performing. See Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000); 20 C.F.R. § 404.1560© (2003). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions in the country." 20 C.F.R. § 404.1566(a) (2003). The ALJ may apply the Grids or consult a vocational expert. See Heckler v. Campbell, 461 U.S. 458, 462 (1983); Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2 (2003). If the claimant's characteristics match the criteria of a particular grid rule, the rule directs a conclusion as to whether he or she is disabled. Pratts v Chater, 94 F.3d 34, 38-39 (2d Cir. 1996).

The Grids do not provide the exclusive framework for making a disability determination if a claimant suffers from non-exertional impairments that "significantly limit the range of work permitted by exertional limitations." Id. at 39 (quoting Bapp v. Bowen, 802

7

F.2d 601, 604-05 (2d Cir. 1986) (citation omitted)). Rather, the ALJ should elicit testimony from a vocational expert to determine if jobs exist in the economy that the claimant can still perform. Bapp, 802 F.2d at 604-05. Work capacity is "significantly diminished" if there is a loss of work capacity that narrows the possible range of work available and deprives the claimant of a meaningful employment opportunity. Id. at 605. Non-exertional impairments include "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." 20 C.F.R. § 404.1569a(c)(1)(vi) (2003). The applicability of the grids should be considered on a case-by-case basis. Bapp, 802 F.2d at 605. However, the "mere existence of a non-exertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines." Id. at 603.

 Here, the ALJ found that Rogers was unable to perform her past relevant work but possessed the RFC to perform light work. T. 21, 27. Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b) (2003). The ALJ concluded that Rogers retained the RFC "to perform the exertional demands of light work . . . . Additionally, [Rogers] must be permitted to alternate sitting and standing every 30 minutes, and she can perform only simple, routine tasks." T. 21, 27. Rogers contends that the substantial medical evidence demonstrates that she had the RFC for less than sedentary work.

8

In support of his conclusion, the ALJ relied on the findings of Dr. Henderson, a consultative examiner. T. 22-23. On July 7, 2003, Dr. Henderson examined Rogers and concluded that she was moderately restricted regarding heavy lifting and carrying as well as from prolonged walking and standing. T. 22, 294. Dr. Henderson also noted that Rogers had a mild restriction for prolonged sitting. Id. Although Dr. Graham concluded that Rogers was unable to perform any sustained work, the ALJ gave greater weight to Dr. Henderson's RFC finding because it was consistent with Dr. Graham's treatment records and with all other substantial evidence of record. T. 23; see Section V© infra. Further, a non-examining state agency consultant determined that Rogers could perform a full range of light work. T. 22, 297-303. Thus, there is substantial evidence to support the ALJ's conclusion that Rogers could perform light work.

Rogers also contends that the ALJ improperly disregarded the diagnoses of depression and anxiety disorder in determining her RFC. However, the ALJ carefully examined Rogers' alleged mental disorders and concluded that these impairments only prevented her from completing complex tasks. T. 18-19, 21-22. In support of his findings, the ALJ noted that Dr. Seddon indicated that Rogers was doing well and her anxiety disorder was stable with medication. See T. 21, 228, 236, 239, 241, 341. Further, Dr. Graff, a consultative psychiatric examiner, examined Rogers and noted that she was capable of following, understanding and remembering simple instructions. T. 21, 288. Dr. Graff concluded that although Rogers appeared to have psychiatric problems, they did "not appear to be significant enough to interfere with [Rogers'] ability to function on a daily basis." T. 288. As to her depressive symptoms, Dr. Graff concluded that the condition

9

appeared to be significantly controlled by her medication.  Id.  Thus, substantial evidence supports the ALJ's findings regarding the severity of Rogers' mental disorders.

Accordingly, it is recommended that the Commissioner's determination in this regard be affirmed.[4]

### C. Treating Physician's Rule

Rogers contends that the ALJ improperly ignored the reports of her treating physicians, Drs. Seddon and Graham.

When evaluating a claim seeking disability benefits, factors to be considered include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant.  Harris v. R.R. Ret. Bd., 948 F.2d 123, 126 (2d Cir. 1991).  Generally, more weight is given to a treating source.  Under the regulations, a treating source's opinion is entitled to controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2) (2003); Shaw, 221 F.3d at 134.  Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons."  Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight to accord the physician's opinion: "(I) the frequency of examination and the length, nature,

---

[4] Rogers also contends that because the ALJ's RFC assessment was flawed, he failed to satisfy his burden to show that jobs existed in sufficient numbers in the regional and national economies that she could perform. See Pl. Mem. of Law (Docket No. 4) at 14-15.  However, as discussed supra, the ALJ's RFC assessment is supported by substantial evidence and, thus, there is no need to address this contention.

10

and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal, 134 F.3d at 503.  If other evidence in the record conflicts with the opinion of the treating physician, this opinion will not be deemed controlling or conclusive, and the less consistent the opinion is, the less weight it will be given.  Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999).  Ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner.  Id. at 133-34; see 20 C.F.R. §§ 404.1527(e), 416.927(e) (2003).

     Here, the ALJ's decision discusses extensively the opinions of Rogers' treating physicians.  See T. 21-23.  Regarding Dr. Seddon, the ALJ discussed Dr. Seddon's treatment of Rogers and noted that as to her panic and anxiety disorders, she was doing well and her condition was stable with medication.  See T. 21, 228, 236, 239, 241, 341. Regarding Dr. Graham, the ALJ discussed Dr. Graham's opinion that Rogers was unable to perform any sustained work.  T. 22, 371-74.  However, the ALJ did not afford Dr. Graham's assessment controlling weight because it was "contradicted by [Dr. Graham's] own treatment records . . . and is not supported by other substantial evidence."  T. 22.  In support of his conclusion, the ALJ noted that Dr. Graham's treatment records indicated Rogers' hip range of motion had been consistently normal and an MRI scan failed to show any neural impingement.  T. 22-23, 328-29, 332.  Further, the ALJ noted that Dr. Graham had only diagnosed Rogers with having chronic low back pain with underlying osteoarthritis, which would not support an assessment that Rogers was unable to work.  T. 23.  Thus, Rogers' contention that the ALJ ignored the medical opinions of her treating physicians is

11

without merit. Moreover, substantial evidence supports the ALJ's conclusion not to give controlling weight to the opinions of Rogers' treating physicians. See Section V(B) supra.

Therefore, it is recommended that the Commissioner's finding in this regard be affirmed.

### D. Subjective Complaints of Pain

Rogers contends that the ALJ's decision to discredit her subjective complaints of pain was in error.

The basis for establishing disability includes subjective complaints of pain even where the pain is unsupported by clinical or medical findings, provided that the underlying impairment can be "medically ascertained." 20 C.F.R. § 404.1529 (2003); see Snel v. Apfell, 177 F.3d 128,135 (2d Cir. 1999). A finding that a claimant suffers from disabling pain requires medical evidence of a condition that could reasonably produce pain. An ALJ must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be expected to be consistent with the medical and other evidence. 20 C.F.R. § 404.1529 (2003); Martone, 70 F. Supp. 2d at 150. Pain is a subjective concept "difficult to prove, yet equally difficult to disprove" and courts should be reluctant to constrain the Commissioner's ability to evaluate pain. Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983). If there is a rejection of the claims of disabling pain, the ALJ must provide specific reasons for doing so. Saviano v. Chater, 956 F. Supp. 1061, 1071 (E.D.N.Y. 1997).

The claimant's credibility and motivation, as well as the medical evidence of impairment, are used to evaluate the true extent of the alleged pain and the degree to

which it hampers the applicant's ability to engage in substantial gainful employment. See Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1978); Lewis v. Apfel, 62 F. Supp. 2d 648, 653 (N.D.N.Y. 1999).  If there is conflicting evidence about a claimant's pain where the degree of pain complained of is not consistent with the impairment, the ALJ must make credibility findings. Donato v. Sec'y of HHS, 721 F.2d 414, 418-19 (2d Cir. 1983).  The ALJ must consider several factors pursuant to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3):

> (I)  [The claimant's] daily activities;
>
> (ii)  The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv)  The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;
>
> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;
>
> (vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2003).

Here, the ALJ concluded that Rogers "has multiple severe impairments which cause significant limitation of her ability to perform work-related activities. . . . However, to the extent [Rogers] alleges being totally precluded from all work-related activities, these subjective complaints regarding the severity of limitations caused by [Rogers'] impairments

are considered not fully credible." T. 21. In support of his conclusion, the ALJ noted that Rogers testified that she could perform daily functions such as taking care of her personal grooming and banking, cooking and preparing food, general cleaning around the house, and laundry. T. 20, 285-88. The ALJ also noted that after her alleged onset date, Rogers was able to return to school and finish classes. T. 20, 237. Further, after examining Rogers, Dr. Graham noted that she "seems to have more discomfort tha[n] I would expect based on her x-ray findings." T. 332. Thus, there is substantial evidence to support the ALJ's conclusion that Rogers' subjective complaints of pain were not fully credible.

Therefore, it is recommended that the Commissioner's determination on this ground be affirmed.

## VI. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the decision denying disability benefits be **AFFIRMED**, Rogers' motion for a finding of disability (Docket No. 4) be **DENIED**, and the Commissioner's cross-motion (Docket No. 5) be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72, 6(a), 6(e).

DATED: May 29, 2007
       Albany, New York

                                                        David R. Horner
                                                        United States Magistrate Judge